UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED - GR
January 4, 2012 3:10 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ald / SCANNED BY ___ / HS

1:12-cv-09
Robert Holmes Bell
U.S. District Judge

JACK HITSMAN,

    Plaintiff,

v.

CAVALRY PORTFOLIO
SERVICES, LLC,

    Defendant.
_____/

**Complaint**

**I.  Introduction**

    1.  This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection Practices Act ("MCPA"), M.C.L..§ 445.251 *et seq.* and Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.  Jurisdiction**

    2.  This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

**III.  Parties**

    3.  Plaintiff Jack Hitsman is a natural person residing in Montcalm County, Michigan.  Mr. Hitsman is a "consumer" and "person" as the terms are defined and used in the

FDCPA. Mr. Hitsman is a "consumer," "debtor" and "person" as the terms are defined and or used in the MCPA and MOC.

4. Defendant Cavalry Portfolio Services, LLC ("CPS") is a Delaware limited liability company, purportedly with offices at 500 Summit Lake Drive, Valhalla, New York 10595. The registered agent for CPS in Michigan is The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025. CPS filed with the State of Michigan an Application for Certificate of Authority to Transact Business or Conduct Affairs in Michigan for the stated purpose of "Debt collection." CPS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CPS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CPS is a "debt collector" as the term is defined and used in the FDCPA. CPS is a "regulated person" as the term is defined and used in the MCPA. CPS is a "collection agency" and a "licensee" as the terms are defined and used in the MOC.

## IV. Facts

5. Mr. Hitsman had a credit account (No. 5155970092009337) with HSBC Bank (Nevada) ("HSBC") which he used to purchase goods and/or services for personal, family or household purposes. Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA, MCPA and MOC.

6. HSBC claimed that Mr. Hitsman failed to pay the debt in full.

7. Mr. Hitsman communicated multiple times to HSBC and its agents that Mr. Hitsman disagreed with the amount of the alleged debt and that Mr. Hitsman refused to pay the alleged debt.

8. Mr. Hitsman continues to dispute the alleged debt. Mr. Hitsman continues to refuse to pay the alleged debt.

9. HSBC charged off and sold the allegedly delinquent account and related, alleged debt.

10. Apparently, a company related to defendant CPS claims to have purchased the allegedly delinquent account and related, and paying less than ten cents on the dollar.

11. Apparently, CPS claims that a company related to CPS placed the account with CPS for collection.

12. On or about December 13, 2011, CPS placed a call from 877-266-8774 to Mr. Hitsman's residential telephone. The call was answered by Mr. Hitsman's telephone answering machine. CPS left music on Mr. Hitsman's telephone answering machine, followed by a female CPS employee coming on the line and saying "Hello." CPS then terminated the call.

13. On or about December 14, 2011, CPS placed a call from 877-266-8774 to Mr. Hitsman's residential telephone. The call was answered by Mr. Hitsman's telephone answering machine. CPS did not leave a message.

14. On or about December 16, 2011, CPS placed a call from 877-266-8774 to Mr. Hitsman's residential telephone. The call was answered by Mr. Hitsman's telephone answering machine. CPS left music on Mr. Hitsman's telephone answering machine, followed by a female CPS employee coming on the line and saying "What the?" CPS then terminated the call.

15. On or about December 21, 2011, CPS placed a call from 877-266-8774 to Mr. Hitsman's residential telephone. The call was answered by Mr. Hitsman's telephone answering machine. A female CPS employee left a message, asking to speak with Mr. Hitsman.

16. On or about December 22, 2011, CPS placed a call from 877-266-8774 to Mr. Hitsman's residential telephone. The call was answered by Mr. Hitsman's telephone answering machine. CPS did not leave a message.

17. On or about December 23, 2011, CPS placed a call from 877-266-8774 to Mr. Hitsman's residential telephone. The call was answered by Mr. Hitsman's telephone answering machine. CPS left music on Mr. Hitsman's telephone answering machine, followed by a female CPS employee coming on the line and saying "Hello? Hello?" CPS then terminated the call.

18. Mr. Hitsman heard each of the above-described messages left by CPS on his telephone answering machine.

19. The only reason CPS and its employee telephoned Mr. Hitsman was to collect an alleged debt from Mr. Hitsman.

20. The only reason the CPS employee on December 21, 2011 left the above-described message on Mr. Hitsman's telephone answering machine, asking to speak with Mr. Hitsman, was in connection with efforts by CPS and its employee to collect an alleged debt from Mr. Hitsman.

21. The CPS employee communicated information regarding a debt directly or indirectly to Mr. Hitsman.

22. The words spoken by the CPS employee in the message left on Mr. Hitsman's answering machine constituted a "communication" as the term is defined and/or used in the FDCPA, MCPA and MOC.

23. The CPS employee did not disclose in the December 21, 2011 message she left for Mr. Hitsman on Mr. Hitsman's telephone answering machine that the call was from a debt

collector.

24. CPS and its employee violated the FDCPA, 15 U.S.C. § 1692e(11), because CPS and its employee did not disclose in the December 21, 2011 message left by the CPS employee for Mr. Hitsman on Mr. Hitsman's telephone answering machine that the call was from a debt collector.

25. When the CPS employee left the above-quoted message for Mr. Hitsman, CPS was aware of multiple published federal district court opinions in which the courts held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector. *See Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643 (S.D.N.Y. 2006).

26. Despite becoming aware that multiple federal district courts had issued written opinions in which the respective federal courts held that it is unlawful for a debt collector to leave a message for a debtor/consumer without identifying itself as a debt collector, CPS, CPS officers, and CPS management, failed to require CPS and its employees when leaving a recorded message for a debtor/consumer to state that the caller is a debt collector.

27. The CPS employee did not disclose in the December 21, 2011 message she left for Mr. Hitsman on Mr. Hitsman's telephone answering machine that the call was from Cavalry Portfolio Services, LLC.

28. The FDCPA states that it is unlawful for a debt collector to place a telephone call to a consumer without providing meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

29. CPS and its employee in the December 21, 2011 message left by the CPS employee for Mr. Hitsman on Mr. Hitsman's telephone answering machine failed to provide meaningful disclosure of the caller's identity and violated the FDCPA, 15 U.S.C. § 1692d(6).

30. CPS and its employee in the December 21, 2011 message left by the CPS employee for Mr. Hitsman on Mr. Hitsman's telephone answering machine did not reveal the purpose of the telephone call.

31. CPS and its employee in the December 21, 2011 message left by the CPS employee for Mr. Hitsman on Mr. Hitsman's telephone answering machine concealed the purpose of the telephone call.

32. CPS and its employee in the December 21, 2011 message left by the CPS employee for Mr. Hitsman on Mr. Hitsman's telephone answering machine failed to reveal and concealed the purpose of the telephone call, which violated the MCPA, M.C.L. § 445.252(e)

33. CPS and its employee in the December 21, 2011 message left by the CPS employee for Mr. Hitsman on Mr. Hitsman's telephone answering machine failed to reveal and concealed the purpose of the telephone call, which violated the MOC, M.C.L. § 339.915(e).

34. The CPS employee intended to speak the above-quoted words that the CPS employee spoke when the CPS employee on December 21, 2011 left the above-described message for Mr. Hitsman on Mr. Hitsman's telephone answering machine.

35. On or about December 29, 2011, Mr. Hitsman's wife, Debra Hitsman, spoke by telephone with a female CPS employee who identified herself as Jackie. The CPS employee confirmed Mr. Hitsman's residential address and date of birth. The CPS employee stated that CPS was recording the telephone conversation. The CPS employee stated that CPS had

purchased Mr. Hitsman's delinquent HSBC account. The CPS employee stated that Mr. Hitsman owed $419.63 to CPS, but that CPS was making a "one time" offer to settle the account with Mr. Hitsman to pay $314.75. Mrs. Hitsman stated that Mr. Hitsman had never heard of CPS and had not received nothing in the mail from CPS. The CPS employee admitted that CPS had not sent anything in writing to Mr. Hitsman. The CPS employee stated that CPS had reported derogatory information regarding the account to the consumer reporting agencies and that CPS was appearing on Mr. Hitsman's credit reports. Mrs. Hitsman repeatedly asked the CPS employee to provide the telephone number for HSBC so that Mr. Hitsman could contact HSBC to determine whether CPS had in fact purchased the account. The CPS employee repeatedly refused to provide Mrs. Hitsman with the HSBC telephone number or with any other way for Mr. Hitsman to determine whether CPS had in fact purchased the account. Mrs. Hitsman continued to state that Mr. Hitsman would not make any arrangement with CPS until Mr. Hitsman had an opportunity to research who CPS is and verify that CPS was telling the truth. Hearing that, the CPS employee abruptly transferred Mrs. Hitsman to a putative "Manager."

36. On or about December 29, 2011, Mrs. Hitsman spoke by telephone with a male CPS employee who identified himself as John Sturtz. The CPS employee stated that he was "Manager of Operations" at CPS. The CPS employee stated that his direct telephone number was 877-805-2531. In the ensuing conversation, the CPS employee made the following statements:

    a) CPS could that day settle the account in full for $251.40, but otherwise, Mr. Hitsman would be liable for the full balance of $419.63.

    b) CPS could that day settle the account in full at a discount of forty percent of the

balance, but if Mr. Hitsman wanted CPS to send him anything in writing, then CPS would hold Mr. Hitsman liable for the full balance.

Mrs. Hitsman stated that Mr. Hitsman was disputing the alleged debt because he had never had any dealings with CPS and had never heard of CPS. Hearing that, the CPS employee made the following statements:

    c)    Mr. Hitsman's HSBC account was purchased by an entity named Cavalry Investments.

    d)    CPS was attempting to collect the alleged debt for its parent company, Cavalry Investments.

    e)    CPS was offering to settle the account at a forty percent discount, but if Mr. Hitsman wanted something more than a telephone call from CPS, such as a letter from CPS stating who CPS is or that CPS owns the account, then CPS would not settle the debt at a discount and Mr. Hitsman would be liable for the full balance plus interest that was accruing at a rate of five percent.

    f)    CPS on December 3, 2011 had reported the account to the consumer reporting agencies and CPS was showing up on Mr. Hitsman's credit reports.

    g)    CPS would not communicate to the consumer reporting agencies that Mr. Hitsman was disputing the debt.

    h)    If Mr. Hitsman wanted the consumer reporting agencies to know that the debt is disputed, then Mr. Hitsman himself would have to communicate the dispute to the consumer reporting agencies and then "back up his claim" that the debt is disputed.

    i)    HSBC charged off the account on September 30, 2011. CPS bought the account on October 20, 2011.

    j)    CPS might be able to settle the account in full at a discount of fifty percent, but if Mr. Hitsman wanted any sort of letter from CPS, then Mr. Hitsman would be required to pay the balance in full.

Mrs. Hitsman again stated that Mr. Hitsman was disputing the alleged debt because he had never had any dealings with CPS and had never heard of CPS. Hearing that, the CPS employee made the following statement:

    k)    CPS could settle the account in full, right then, for a payment of $251.00, but if Mr. Hitsman wanted anything in writing from CPS, then Mr. Hitsman would have to pay the balance in full.

Mrs. Hitsman again stated that Mr. Hitsman was disputing the alleged debt because he had never had any dealings with CPS and had never heard of CPS. Hearing that, the CPS employee made the following statement:

    l)    Okay. That's new. Okay, that's not a valid dispute."

37. The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey*

43. The FCRA states that if a consumer has disputed a debt with the creditor or other furnisher of information (such as a debt collector), the furnisher may not report the debt to a consumer reporting agency unless it also discloses that the debt is disputed by the consumer. 15 U.S.C. § 1681s-2(a)(3). In turn, the consumer reporting agency must note in future consumer reports containing information regarding the account that the consumer disputes the debt.

44. It is unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt. . . ." 15 U.S.C. § 1692e(10).

45. The CPS employee and putative Manager of Operations falsely and wrongfully represented that CPS could that day settle the account in full for $251.40, but otherwise, Mr. Hitsman would be liable for the full balance of $419.63.

46. The CPS employee and putative Manager of Operations falsely and wrongfully represented that CPS could that day settle the account in full at a discount of forty percent of the balance, but if Mr. Hitsman wanted CPS to send him anything in writing, then CPS would hold Mr. Hitsman liable for the full balance.

47. The CPS employee and putative Manager of Operations falsely and wrongfully represented that CPS was offering to settle the account at a forty percent discount, but if Mr. Hitsman wanted something more than a telephone call from CPS, such as a letter from CPS stating who CPS is or that CPS owns the account, then CPS would not settle the debt at a discount and Mr. Hitsman would be liable for the full balance plus interest that was accruing at a rate of five percent.

48. The CPS employee and putative Manager of Operations falsely and wrongfully represented that CPS would not communicate to the consumer reporting agencies that Mr.

Hitsman was disputing the debt.

49. The CPS employee and putative Manager of Operations falsely and wrongfully represented that if Mr. Hitsman wanted the consumer reporting agencies to know that the debt is disputed, then Mr. Hitsman himself would have to communicate the dispute to the consumer reporting agencies and then "back up his claim" that the debt is disputed.

50. The CPS employee and putative Manager of Operations falsely and wrongfully represented that CPS might be able to settle the account in full at a discount of fifty percent, but if Mr. Hitsman wanted any sort of letter from CPS, then Mr. Hitsman would be required to pay the balance in full.

51. The CPS employee and putative Manager of Operations falsely and wrongfully represented that CPS could settle the account in full, right then, for a payment of $251.00, but if Mr. Hitsman wanted anything in writing from CPS, then Mr. Hitsman would have to pay the balance in full.

52. It was deceptive and unfair for CPS and its putative Manager of Operations to repeatedly state that CPS would immediately withdraw its settlement offer if Mr. Hitsman were to do the prudent thing and insist on CPS sending Mr. Hitsman a letter with basic information identifying CPS so that Mr. Hitsman could determine whether the claims being made by CPS were legitimate.

53. It was deceptive and unfair for CPS and its putative Manager of Operations to repeatedly state that CPS would immediately withdraw its settlement offer if Mr. Hitsman were to refuse to settle that day on the basis of nothing more than a telephone call.

54. It was deceptive and unfair for CPS and its putative Manager of Operations to

repeatedly state that CPS would immediately withdraw its settlement offer if Mr. Hitsman were to exercise his rights under the FDCPA and Michigan law and insist on waiting for CPS to send Mr. Hitsman a written notice containing the information contained in 15 U.S.C. § 1692g(a), which the FDCPA and Michigan laws required CPS to send Mr. Hitsman within five days after the initial communication between the parties.

represented that

55. The CPS employee and putative Manager of Operations falsely and wrongfully stated that Mr. Hitsman's dispute was not valid.

56. The HW employees made false statements regarding the rights of a consumer to dispute a debt as afforded by the FDCPA.

57. The CPS employee and putative Manager of Operations made false statements regarding Mr. Hitsman's right to dispute the debt as afforded by the FDCPA.

58. Each CPS employee who spoke by telephone with Mrs. Hitsman intended to speak to Mrs. Hitsman the words that the CPS employee spoke to Mrs. Hitsman.

59. The acts and omissions of CPS and its employees done in connection with efforts to collect an alleged debt from Mr. Hitsman were done intentionally and wilfully.

60. CPS and its employees intentionally and wilfully violated the FDCPA, MCPA and MOC.

61. CPS failed to mail Mr. Hitsman a timely written notice of his rights as required by the FDCPA, 15 U.S.C. § 1692g.

62. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

63. CPS, to increase its business and profits, has knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

64. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered damages for which he should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

65. Plaintiff incorporates the foregoing paragraphs by reference.

66. Defendant violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

   b) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

   c) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

    d)      Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

    a)      Damages pursuant to 15 U.S.C. § 1692k;

    b)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

    c)      Such further relief as the court deems just and proper.

### Count 2– Michigan Collection Practices Act

67.    Plaintiff incorporates the foregoing paragraphs by reference.

68.    Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

    a)      Defendant violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

    b)      Defendant violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

    c)      Defendant violated M.C.L. § 445.252(n) by using a harassing, oppressive and abusive method to collect a debt; and

    d)      Defendant violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

    a)      Damages pursuant to M.C.L. § 445.257(2);

    b)      Treble damages pursuant to M.C.L. § 445.257(2); and

    c)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2).

## Count 3 – Michigan Occupational Code

69. Plaintiff incorporates the foregoing paragraphs by reference.

70. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

   a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

   b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

   c) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive and abusive method to collect a debt;

   d) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

   e) Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

   a) Actual damages pursuant to M.C.L. § 339.916(2);

   b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

   c) Statutory damages pursuant to M.C.L. § 339.916(2);

   d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2); and

   e) Equitable relief pursuant to M.C.L. § 339.916(1).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: January 4, 2012

                                              /s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com